In re BEVERLYRIDGE CO. et al.

OSWALD et al. v. BEYER.

Circuit Court of Appeals, Ninth Circuit.
November 12, 1929.

No. 5914.

Dietrich, Circuit Judge, dissenting.

George Delany Blair and J. Gilbert Fall, both of Los Angeles, Cal., for appellants.

Lorrin Andrews, of Los Angeles, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. This is an appeal from an order denying two claims, one of Richard Castle, and the other, George H. Oswald. By agreement the record has been consolidated, and both appeals were heard together.

The bankrupt copartnership consisted of F. A. Arbuckle, John M. Pratt, R. W. Purpus, I. W. Norcross, James Westervelt, and Charles Stone. The partnership was formed for the purpose of acquiring a tract of about 100 acres of land, subdividing the property into residence lots, improving the streets and selling the lots. Mrs. Stone, with her husband, Charles Stone, conveyed the property to Charles Stone, trustee, by a deed of trust, by the terms of which he was given the sole and exclusive management of the real property conveyed with power to sell the same. The property was subject to two trust deeds given to secure claims, one for $350,000 and one for $250,000. The copartners all joined in a general power of attorney to Charles Stone. In order to improve the proposed streets in the tract, the copartnership desired to secure some one who would make an investment of between $500,000 and $600,000 for that purpose, and accept in payment therefor a part of the property subdivided, and employed Richard Castle to secure such an agreement. In pursuance of that employment, on November 5, 1925, the copartnership addressed a letter to appellant Castle as follows:

"November 5, 1925.

"Mr. Richard Castle 9150 West Pico Los Angeles Dear Sir: In connection with your efforts on our behalf in obtaining contract for us with Oswald Brothers—We herewith beg to state that when this deal is completed, we shall deed to you $25,000 worth of property in Beverlyridge. It is understood that you are to pay the release price on the lots which runs between $1,500 and $1,600.

"Yours very truly,
"Beverlyridge Company,
"[Signed] Charles Stone, Managing Director."

Thereafter, and on November 18, 1925, an agreement was signed by appellant George H. Oswald and by all the members of the copartnership either in person or by Charles Stone as attorney in fact, wherein the appellant Oswald agreed to improve the property as desired by the copartnership. On December 14, 1925, Charles Stone, as trustee, acting on behalf of the copartnership, in consideration of his aforesaid services, entered into an agreement to convey to Richard Castle a portion of the property which was to be subdivided by the copartnership, described by metes and bounds, and in area was slightly less than one acre. Thereafter, and before the property was subdivided, the partnership became involved in financial difficulty, and failed to pay the interest on the obligations secured by the deeds of trust. The property was sold under the provisions of the two trust deeds above mentioned, and thereafter, and on the 16th day of June, 1926, an involuntary petition in bankruptcy was filed against the

copartnership, which was adjudged bankrupt on July 9, 1926. Richard Castle filed his claim under the above-mentioned contracts dated November 5 and December 14, 1925, and George H. Oswald filed a claim for breach of the above-mentioned contract of November 18, 1925. The trustee disallowed the claim of Richard Castle upon the ground that he had not performed the services which he had agreed to perform as a consideration for the contract, in that the deal with Oswald was not completed within the meaning of the letter of November 5, 1925, and that Richard Castle could have obtained the property which the copartnership agreed to convey to him, by paying the release price necessary to secure its release from the incumbrances thereon, and that therefore the loss suffered by Richard Castle was due to his own failure to protect his equitable interests in the property by such payment.

With reference to the first point it is sufficient to say that the rights of the parties are to be determined under the agreement of December 14, 1925, and not under the agreement of November 5, 1925, which was superseded thereby. That agreement is only material as showing that Richard Castle was engaged to perform services for the copartnership which in the judgment of the copartnership were worth $25,000, and that such services were to be paid by a conveyance of real estate of that value subject to incumbrances of about $5,000. The second reason given for rejecting the claim of Richard Castle is based upon the following provision of the contract of December 14, 1925, to wit:

"It is further understood and agreed that as soon as party of the first part (Charles Stone) shall have caused to be duly approved and recorded in the office of said recorder a map or plat of the tract which contains the above described premises, party of the second part (Richard Castle) shall quitclaim and reconvey said premises by the same description to party of the first part and party of the first part shall immediately thereupon convey to party of the second part, subject to the uniform restrictions to be incorporated in all conveyances of lots in said proposed tract, the premises hereinabove described by their proper lot and tract numbers.

"It is further understood and agreed that at the time of such conveyance party of the second part shall pay and discharge the full release price necessary to secure partial reconveyance of said lots by the trustee under two certain deeds of trust, each of which is now a blanket lien on the within described premises and other property."

It is evident from these provisions that the only obligation on the part of the claimant to pay the release price on the property agreed to be conveyed to him was to do so after the property had been subdivided and the map thereof recorded. This map was never recorded. To this it may be added that, while the trust deed securing the incumbrances upon the property contained a release clause which would permit the release of portions of the land, not less than an acre in area, by payment of $3,190 per acre, the tract agreed to be conveyed to the claimant was less than an acre, and therefore not subject to release. It is evident that the parties, in executing the contract, did so in view of the provisions in the said trust deeds which provided that, after subdivision of the property, single lots could be released on the payment of $1,500 or $1,600 each. The claimant not being in default, and the copartnership having put it out of their power to comply with their contract by reason of the sale under the trust deeds and by their subsequent bankruptcy, claimant was entitled to treat the bankruptcy adjudication as an anticipatory breach of the contract to convey the land and thereupon to present his claim for damages for such breach. Upon this subject of anticipatory breach, see 2 Remington on Bankruptcy, § 813; Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Central Trust v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. The question before the referee was not whether or not the claimant could have protected himself against the default of the bankrupt in some way but whether or not the bankrupt had breached the contract to convey. The claimant was not in default at the time the property was sold under the trust deeds nor when the copartnership became bankrupt.

We will next consider the measure of damages for such breach. The claimant, Richard Castle, testified before the referee as to the value of the property agreed to be conveyed as follows:

"The approximate size was 50,000 square feet, and divided into three lots of approximately one-third acre or three-eighths acre each, and I considered the lots worth about $8300.00 each—that is fully improved, and I was to get the property with improvements all in and paid for. The property was never conveyed to me."

According to the contract for improvements with claimant Oswald, the cost of such improvements would be between five and six thousand dollars per acre.

During the hearing before the referee the following stipulation was agreed to:

"It was stipulated that the value of the property conveyed to Mr. Castle was $25,000 less $^{31}\!/_{350}$ths plus $^{43}\!/_{360}$ths of $6190, leaving a balance of $20,474 due Mr. Castle if his claim is allowed plus $880 previously allowed."

This stipulation, it will be observed, ignores the value to the property of the proposed improvements. In this connection it should be stated that the claim filed by appellant Castle was based upon the letter of November 5th and also the agreement of December 14th. The claimant does not specifically allege a breach of the contract of December 14th, but does allege that by reason of the foreclosure of the trust deed "any and all rights held by said bankrupts in and to said property known as Beverlyridge has been lost ⁂ * * and that the said deponent has lost any and all right or interest he may have in and to said property mentioned in Exhibits A and B herein, by reason of said foreclosure." (Exhibit A to the claim is the letter of November 5, 1925, and Exhibit B is the agreement of December 14, 1925.)

So far as the contract of December 14, 1925, is concerned, the measure of damages of the appellant is the value of the property, less $4,526, the amount of the incumbrance. If the value of the land described in the agreement of December 14, 1925, is $25,000, with the streets improved as contemplated, it was evident, in view of the magnitude of the improvements contemplated by the contract with the appellant Oswald, that the property would be worth very much less without the improvements. The stipulation of the parties should be construed with reference to that obvious fact. The claimant is not in a position to make any claim based upon the agreement of November 5, 1925, because he accepted the contract of December 14th in lieu thereof. It is undoubtedly true that the claimant expected to get the lots with the improvements Oswald was to make, but the making of those improvements was the very thing for which the appellant was employed, and his loss is partly due to the failure of Oswald to carry out the proposed plan. In executing the contract of December 14, 1925, both parties expected that the agreement with Oswald would be carried out. Their rights must be measured by the later contract. For this reason it is manifest that the stipulated amount of $20,474, as the amount of the appellant's claim, if allowed, is too large an amount for damages for the breach of the agreement of December 14, 1925. The record does not show the market value of the land described in the claimant's contract of December 14, 1925, without the proposed improvements.

The claim of Oswald will next be considered. While the parties had signed a written agreement for the improvements above mentioned, the claimant desired to have the contract not only signed by the members of the copartnership, but also by their respective wives, owing to the provisions of section 172a of the California Civil Code, which requires the wife to join in making conveyances of community property. Appellant contends that this property was not community property within the meaning of that law, but that it was partnership property, and that the signatures of the respective wives were unnecessary, and the contract was valid and binding between the parties without those signatures. It is unnecessary for us to determine that question, for the referee found the facts to be that the agreement was never delivered. This finding is sufficiently supported by the evidence. The claimant at all times treated the agreement as ineffective until signed by the respective wives of the partners, and negotiations were being conducted by claimant's attorney for the purpose of securing such signature, which had not been completed at the time the bankrupt lost the property. It is true that the claimant was not called upon to enter upon the performance of the contract by its terms until he was furnished certain engineering data required for the making of the improvements, but, under the evidence as to the delivery of the contract, the findings of the referee as to its execution cannot be disturbed, and the order disallowing the claim was proper.

The order rejecting the claim of Richard Castle will be reversed, with instructions to the trial court to enter an order allowing claim for the value of the property described in the contract of December 14, 1925, unimproved as of the date of the adjudication of the bankruptcy, less $4,326. The allowance of the claim of Richard Oswald for $880, money loaned, is to be included in the order of allowance. The order disallowing the claim of Oswald is affirmed.

DIETRICH, Circuit Judge (dissenting). 1. By deed reserving nothing but a contingent interest in the net profits, if any, of the enterprise, the bankrupts conveyed the property, to which alone Castle's contract related, to a trustee with unrestricted power touching its use and disposition. Castle's contract was made with this grantee as trustee and not otherwise, and under it he has recourse against such trustee and the trust property, but not against the bankrupts here or against the bankrupt estate, which is entirely distinct

from the trust estate. Under such conditions a trustee is not the agent of the beneficiaries.

2. But, if a contrary view were admissible, by paying the very obligation he had assumed and agreed to discharge, Castle could have withdrawn his property from the lien of the mortgage which was foreclosed, and thus have avoided the loss. The reasons he assigns for not so doing seem to me to be frivolous. I therefore think the judgment should be affirmed.