### In re SCHULTE RETAIL STORES CORPORATION.

### No. 378.

Circuit Court of Appeals, Second Circuit.

July 17, 1939.

Jerome Eisner and Ernst, Gale, Bernays & Falk, all of New York City (Henry I. Fillman, of New York City, of counsel), for debtor-appellee-appellant.

Thomas Burns Drum and Roy M. Livingstone, both of Philadelphia, Pa., and Gustave A. Rogers, of New York City (Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., of counsel), for claimant-appellant-appellee.

Before SWAN, CHASE, and PATTERSON, Circuit Judges.

CHASE, Circuit Judge.

The debtor, Schulte Retail Stores Corporation, and its subsidiary, D. A. Schulte, Inc., both filed separate petitions for reorganization in the District Court for the Southern District of New York on June 3, 1936. They were, by orders duly made, both continued in possession of their assets. Among those of the subsidiary debtor was a lease of a portion of the Ritz-Carlton Hotel in Philadelphia, Pa., for a term of twenty years from July 17, 1928, upon stipulated annual rentals to be paid by the lessee. The rentals originally reserved were twice reduced by agreement of all the parties interested and at the time of the first reduction on May 1, 1932, Schulte Retail Stores Corporation by virtue of a valid agreement became "surety to Owner, its successors and assigns, for the full, faithful and prompt performance by Tenant of all the terms and conditions of Lease, as above amended, on the part of Tenant to be kept and performed". The surety was not entitled to notice of any default by the lessee and it is undisputed that it was

bound as a primary obligor to the performance of the lessee's obligations under the lease.

When the lease was executed and at all pertinent times since, the hotel, of which the property covered by the lease was a part, was encumbered by a first mortgage under which Land Title Bank and Trust Company is now the trustee. On July 2, 1936, the trustee took possession of the mortgaged property by virtue of defaults under the mortgage and on July 28, 1936, demanded the payment to it by the lessee of the rent due under the lease. On September 9, 1936, the lessee rejected the lease. On the following October 15th, the owner of the fee and the first mortgage trustee each filed identical claims against both the lessee and the surety for damages due to the rejection of the lease. These claims exceeded the gross rent for three years from the date of rejection plus accrued rent to that date. The fee owner has, however, conceded that it has no claim in its own right and the claim it filed may be disregarded. On February 2, 1937, the surety gave the first mortgage trustee notice that it rejected its obligation.

Thereafter the claim filed by the first mortgage trustee came on for hearing before a special master. The net amounts of accrued rent both at the time the lessee rejected the lease and at the time the surety gave notice of its rejection of its obligation were stipulated. It was also conceded that the amount of the damages sustained from the rejection of the lease exceeded the limited amount for which the claim could be allowed against the lessee. As a result, therefore, two issues only are presented. The first comes up on the appeal of the claimant and is whether or not the amount provable against the lessee's surety in reorganization is limited to the amount provable against the lessee and the second, which is really inherent in the first, comes up on cross appeal of the debtor and is whether or not the accrued rent provable is that to the date the lease was rejected or that to the date the surety rejected its suretyship obligation. The special master recommended the allowance of the claim against the surety in the limited amount it was provable against the lessee. The district court allowed it as so limited with the single exception that accrued rent was allowed as of the date the surety gave notice of its rejection and the three year period made then to begin.

On the first issue this appeal is governed by the decision in Hippodrome Bldg. Co. v. Irving Trust Co., 2 Cir., 91 F.2d 753. The only difference is that a surety in reorganization is here involved while the case named dealt with a guarantor in reorganization. What was then said as to the reason why a landlord could not prove against a lessee's guarantor for greater damages than could be proved against the lessee applies with equal force to this situation. To be sure the guarantor's liability was secondary until the lessee defaulted but it had defaulted and the guarantor's liability had become fixed before the lease was rejected. The liability of this surety to pay the rent reserved while the lease remained in existence or damages for its rejection which flowed from its so-called primary obligation was a liability of the same character as that of the guarantor which had ripened after default of the lessee. The damages sustained by the claimant resulting to a person injured by the rejection of the lease were provable only as provided in Sec. 77B and limited in amount by sub-division (b) (10), 11 U. S.C.A. § 207 (b) (10), against the surety in reorganization because they were subject to the same limitation whenever their proof had to be made under the statute whether made against a lessee in reorganization, a guarantor in reorganization, or a surety in reorganization or anyone else in reorganization.

The claimant, however, puts its case upon the ground that it is a person injured by the rejection by the surety in reorganization of an executory contract of suretyship and that it is for that reason a creditor under the statute entitled to prove its actual damages. In so far as this was an executory contract it was an unilateral obligation to perform the same obligations the lessee had agreed to perform. In all other respects it was not executory at all but had been performed. Consequently, when the attempted rejection of it was made there was nothing for the surety in reorganization to reject. What it did was simply a way of asserting a continued refusal to perform by one already in default. Nothing was thereby changed and no new rights arose. It is implicit in the language of the statute that a rejection of an executory contract involves the relinquishment of some right thought too burdensome to be retained and not merely the repudiation of an obligation which could

in no circumstances ever be an asset to the debtor. As such a rejection as the surety made here does not fall within the statute, the claimant did not thereby become a creditor of the surety and remained only a creditor because of the rejection of the lease.

 What has been said necessarily disposes of the second issue as to whether or not the accrued rent is provable only to the date of the rejection of the lease. As no claim for damages is provable except for the injury resulting from the rejection of the lease, the date of its rejection is the time to which the accrued rent must be computed. At that time the lease fell and damages became recoverable in lieu of rent.

Order modified.