**In the Matter of CRAWFORD CLOTHES, INC., Debtor.**

**No. 61 B–438.**

United States District Court
S. D. New York.
Jan. 12, 1970.

Stanley J. Mayer, New York City, for claimants A & H Levine.

Hahn, Hessen, Margolis & Ryan, New York City, for trustee; Julius J. Abeson, New York City, of counsel.

MOTLEY, District Judge.

These are petitions to review an order of the Referee in Bankruptcy, Asa S. Herzog, of May 13, 1969 allowing the claim of Aaron and Harvey L. Levine (claimants) against the bankrupt estate of Crawford Clothes, Inc., in the reduced amount of $10,300.27, as a general claim, and directing the trustee, New York Credit Men's Adjustment Bureau, Inc., to pay a 30% interim dividend. The claimants and the trustee both seek review of the May 13, 1969 order.

The underlying facts are not in dispute. The following facts were stipulated by the claimants and the trustee:

1. On April 15, 1953, claimants' predecessor leased certain premises in Huntington, Long Island to the bankrupt for 25 years (May 1, 1953 to April 30, 1978) at a net rental of $25,000 per year, with certain charges (taxes, water, etc.) added.

2. Prior to June 9, 1961, when bankrupt filed a petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act and was allowed to continue operation of the business on the premises as debtor-in-possession, claimants had become the owners of the premises.

3. Also, prior to June 9, 1961, the debtor-in-possession had sublet a part of the premises to two subtenants, Franklyn Hess, a furniture store, and Seaholm Wines and Liquors, Inc.

4. On June 12, 1961, the debtor-in-possession moved to disaffirm the lease, but on June 27, 1961, prior to the return date of the motion, the parties entered into a stipulation in regard to the lease.

5. The stipulation provided, inter alia, that claimants accept surrender of the lease, that the parties exchange releases, that the parties enter into a short-term lease of the premises until December 31, 1961 at a rental of 6% of gross sales, that debtor-in-possession vacate the premises on or before December 31, 1961, and that the landlord have "the right to file a claim as a general creditor for a sum not exceeding $14,000."

6. On July 12, 1961, an order was entered by the referee approving the stipulation.

7. In accordance with the stipulation, the debtor-in-possession occupied the premises until December 31, 1961 and paid a rental of $2,955.23. (However, testimony of claimants indicated that the amount paid was $3,511.32 and this was the figure used by the referee).

8. The Chapter XI proceeding terminated on January 31, 1962, when an order was entered adjudicating the debtor-in-possession a bankrupt.

9. The two sublessees, whose leases were disaffirmed by order of the referee dated July 31, 1961, continued to remain on the premises for varying periods, during which periods sublessee Hess paid to claimants the sum of $7,812.45, and sublessee Seaholm paid to claimants the sum of $4,666.70, making a total of $12,479.15.

10. On April 6, 1962, claimants entered into a lease with Bohack, the food store, for a period of 25 years at the monthly rental of $3,603.25, plus certain extra charges.

11. The lease with Bohack required claimants to demolish the premises and to construct on the land a new building for Bohack's use. The term of the lease was to commence 45 days after notice of issuance of a Certificate of Occupancy.

12. On May 16, 1962, claimants commenced the required demolition. The Certificate of Occupancy issued October 3, 1962. Bohack commenced payment of rent on November 19, 1962 and has remained in possession since that date.

In addition to the foregoing stipulated facts, the referee found from the evidence adduced at a hearing before him that the claimants made serious attempts to find new tenants and were unable to do so until they entered into the agreement with Bohack.

There were two questions decided by the referee:

1. Whether claimants' damages are to be measured by the rent reserved in the lease from July 1, 1961 to November 19, 1962, when Bohack started to pay rent, as claimants contend; or whether they are to be measured from July 1, 1961 to May 16, 1962, the date when demolition commenced, as the trustee contended before the referee.

2. Whether the $14,000 figure in the stipulation is a liquidated claim for damages as claimants contend; or whether claimants must prove damages, with the $14,000 figure being a maximum limitation on the amount of damages recoverable, as the trustee claims.

The referee agreed with the trustee's position on each question. As to the first question, the referee agreed with claimants that the amount of damages to be allowed is controlled by the lease provisions as interpreted by New York law. The referee then held that the lease, as interpreted by New York law, required the lessee to pay the difference, if any, between the rent reserved in the lease, and the amount for which the premises can be relet. But, in this case, the referee ruled, the lessee's obligation to pay rent ceased when the claimants by their voluntary act demolished the premises and erected a new building. The referee based this ruling on his conclusion that "nothing in the lease would permit the claimants to collect rent from the bankrupt during the period" of demolition and new construction.

Contrary to the position taken by claimants, the referee held that the stipulation provision on which claimants relied was clear, required proof of actual damages, and could not be construed as a liquidated amount.

In their petition for review, claimants say, "the said findings and order were erroneous in that the damages should have been computed to November 19, 1962 on which date H. C. Bohack Company, a new tenant, first took possession of the new building and commenced payment of rent therefor. The damages to November 19, 1962 would have been far in excess of the $14,000 claim filed by these creditors." (Petition, para. 3, p. 1).

The trustee complained in its petition as follows:

1) The lease provisions relating to claimants' damages on the bankrupt's breach, as interpreted by New York law, do not control the damages to be allowed, where, as here, the rentals received during part of the unexpired term, under a lease with a new tenant, H. C. Bohack Company, exceed the rentals reserved in the bankrupt's lease for the same period and a failure, under the lease provisions, to offset the rental surpluses against the prior deficits, is inequitable as against the bankrupt's other creditors and is a penalty unenforcible against the bankrupt's estate.

2) If claimants are entitled to any damages, they are allowable for the period July 1, 1961, date of surrender of the lease, to April 6, 1962, date of the Bohack lease, which provided for demolition of the premises and erection of a new building. Damages for such period amount to $6,656.46, in which amount the claim should be allowed.

Claimants had filed their claim as a general creditor for $14,000.00 in No-

vember 1961. The referee found that claimants' damages, measured from July 1, 1961, the date of surrender of the original lease, until the date of demolition amounted to $10,300.27. He arrived at this figure by subtracting from the rent due for that period ($26,290.74, including taxes, insurance, fuel) all monies paid during that period by the bankrupt ($3,511.32) and all monies paid during that period by the sublessees ($12,479.15).

The referee cited no authority for his conclusion that the lease provisions, as interpreted by New York law, controlled the amount of damages to be allowed. This, however, was error. The claim here arose out of the indemnity or damage clauses (Paragraphs Fourth and Seventeenth) in the original lease. The stipulation pursuant to which the claim is made was entered into only after the bankrupt moved to disaffirm the lease in the reorganization proceeding. The claim is, therefore, founded upon an anticipatory rejection or breach of the lease agreement which had seventeen years to run.

The amount of damages to be allowed in bankruptcy on such a claim, relating to an unexpired lease, is controlled by an applicable provision of the Bankruptcy Act, Section 63(a) (9), 11 U.S.C. § 103(a) (9). Oldden v. Tonto Realty Corp., 143 F.2d 916 (2d Cir. 1944); cf. In re Huyler's of Delaware, Inc., 30 F. Supp. 298 (S.D.N.Y.1939); Note, 45 Col.L.Rev. 266; Newman, Rent Claims in Bankruptcy, 43 Col.L.Rev. 317. Section 63(a) (9) provides that, "Debts of the bankrupt may be proved and allowed against his estate which are founded upon * * * (9) claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property: *Provided, however,* That the claim of a landlord for damages for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after bankruptcy, plus an amount equal to the unpaid rent accrued, without acceleration, up to such date * * *."

The Court of Appeals for this Circuit, referring to the effect of Section 63(a) (9), ruled in the *Oldden* case, *supra*, that "[t]he statute now makes the termination of the lease complete, and the damages fixed * * *." 143 F.2d at p. 921. The original lease was terminated by the stipulation on July 1, 1961. Claimants were, therefore, entitled to the rent reserved by the lease, without acceleration, for the year next succeeding. Since there was no unpaid rent accrued on July 1, 1961, claimants are not entitled to anything additional. Apparently, no security had been paid the landlord and, therefore, we do not have the problem presented in *Oldden, supra*, of a deduction of that amount from the allowable claim. Since the statute makes the termination of the lease complete and the one year's rent a fixed damage claim, the trustee is not entitled to a set-off for rents paid under any reletting subsequent to July 1, 1961. *Oldden, supra*; Note, 45 Col.L.Rev. 266, *supra*.

Here, however, claimants have made it abundantly clear that they waive their right to a full year's rent under the statute and are happy to accept the lesser amount claimed of $14,000. (Main Brief, p. 15). There appears to be no prohibition against allowing a landlord to knowingly waive his right and accept a sum less than that allowed by the statute. The prohibition is against allowing the landlord by some crafty provision to recover an amount greater than the statutory limit. *Oldden, supra*; *Newman, supra*; Note, 45 Col.L.Rev. 266, *supra*.

The order of the referee is, therefore, reversed and the claim remanded to the

referee for allowance of the $14,000 claim if security, in fact, had not been paid to the landlord.

So ordered.