**RHEDOM REALTY CORPORATION,**
Plaintiff-Appellant,

v.

**MAMMOTH MART, INC. and Subsidiaries, Defendant-Appellee.**

No. 74–918–F.

United States District Court,
D. Massachusetts.

July 7, 1975.

William F. McCarthy, Charles P. Normandin, Boston, Mass., for debtor.

Richard A. Boren, Milton Stanzler, Providence, R. I., for Rhedom Realty.

Bernard A. Riemer, Boston, Mass., for Joseph Bloom.

## OPINION

FREEDMAN, District Judge.

This is an appeal, pursuant to Rule 801 *et seq.* of the Rules of Bankruptcy Procedure, from the decision of the Bankruptcy Judge limiting appellant Rhedom Realty Corporation ("Rhedom") to one proof of claim rather than two in the consolidated proceedings in bankruptcy under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* ("the Act"), concerning Mammoth Mart, Inc. and its subsidiaries. The Judge also found that the amount allowed under Rhedom's claim could not exceed the figure resulting from the measure of damages specified in § 353 of the Act, 11 U.S.C. § 753.

After consideration of the record below, as well as the oral and written arguments of counsel, the Court has concluded that it must affirm the Bankruptcy Judge's Order of November 22, 1974. Moreover, it accepts his findings of fact, which are summarized below, as complete and fairly stated.

The debtors herein are Mammoth Mart, Inc., a Delaware corporation operating a retail discount store chain, and its many subsidiaries which have filed petitions under Chapter XI of the Act, 11 U.S.C. § 701 *et seq.* The individual proceedings have been consolidated, per order of the Bankruptcy Court, into one unified proceeding, and debtors have been allowed to continue their operations subject to further orders of the Bankruptcy Court. Furthermore, Mammoth Mart, Inc. and its subsidiaries have been authorized, as of June 28, 1974, to terminate the operations of some of their unprofitable stores, including the juvenile goods store in Warwick, Rhode Island, and to reject as executory contracts the leases pertaining to these stores.

On October 22, 1974, the Bankruptcy Court issued an Order granting the debtors' Application for Consolidation for Purposes of Proposing an Arrangement, but excepted from its Order any decision on the objection raised by Rhedom. A hearing was subsequently held in which Rhedom was permitted to present evidence and to argue why it should be allowed to present two proofs of claim in the consolidation—one against Mammoth Mart of Massachusetts, Inc., as successor lessee on a rejected lease, and one against the parent, Mammoth Mart, Inc., as guarantor of the obligations of the lessee. Consistent with this contention, Rhedom argued that its recovery against the successor lessee should be for the amount specified in § 353 of the Act and its recovery against the guarantor for the full amount of the term of the lease less the amount received in damages from the successor lessee.

Rhedom became involved with Mammoth Mart in the summer of 1970, when it was approached by a broker who indicated that Brodsky's Inc., a Rhode Island corporation which had previously operated juvenile goods stores in Rhode Island, was interested in leasing space in a shopping center then being constructed by Rhedom in Warwick, Rhode Island. Prior to that time, Brodsky's had been purchased by Mammoth Mart. Brodsky's Inc. was liquidated at a later date into Bender's Inc., another subsidiary of Mammoth Mart, Inc., which was in turn liquidated into Mammoth Mart of Massachusetts, Inc.

After a short period of negotiation, Rhedom and Mammoth Mart, Inc. entered into a letter of understanding which outlines the details of the proposed lease for the occupancy by Brod-

sky's in the new building. In the letter, Mammoth Mart, Inc. appears as the primary obligor, and therefore, no mention is made therein concerning it being secondarily liable as a guarantor of the lease.

A few weeks later, but before the lease was signed, Mammoth Mart, Inc. informed Rhedom that the tenant on the lease was to be Warwick-BBC, Inc.,[1] a wholly-owned subsidiary of Mammoth Mart, Inc., to be organized with the express purpose of entering into the lease.[2] From that point on, the concept of a guarantee by Mammoth Mart, Inc. became crucial to the negotiations because Rhedom was understandably reluctant to enter into a twenty-year lease, involving large sums of money, with a shell corporation without first having obtained the commitment of its parent. Indeed, Rhedom did not attempt to check the credit of Warwick-BBC, Inc., but instead relied solely upon the credit of Mammoth Mart, Inc. as the party responsible for the obligations under the lease.

Rhedom and Warwick-BBC, Inc. signed the lease sometime during November 1970. The lease is dated as of November 12, 1970 despite the fact that the latter corporation was not qualified to do business in Rhode Island at that time. Mammoth Mart's guarantee is also dated November 12, 1970.

From the foregoing facts, the Bankruptcy Judge made the specific finding, which this Court accepts, that the form of the instant transaction "does not obscure the fact . . . that the transaction was negotiated as and was intended by both sides to be a lease between Rhedom as landlord and Mammoth Mart, Inc. as the obligated tenant." Indeed, this finding is consonant with the facts and the principles of equity which govern proceedings under Chapter XI of the Act. *In re Trans-Pacific Corp.*, 76 F. Supp. 623 (S.D.Cal.1947), *aff'd* 166 F.2d 102 (9th Cir.), *cert. denied*, 335 U.S. 815, 69 S.Ct. 32, 93 L.Ed. 370 (1948); *In re Texas Consumer Finance Corporation*, 480 F.2d 1261 (5th Cir. 1973).

In *Stone* v. *Eacho*, 127 F.2d 284 (4th Cir. 1942), the Court disregarded the separate corporate existence of a Virginia subsidiary to a Delaware corporation bearing the same name and allowed creditors of the Virginia corporation to regard both corporate entities as one, thus placing creditors of both bankrupt corporations on a par for purposes of the consolidated proceedings. The Court's rationale was predicated on the fact that creditors of the Virginia corporation had relied solely upon the credit of the parent throughout their dealings with the subsidiary.

The instant case presents a similar situation. The preliminary negotiations were between Mammoth Mart, Inc. and Rhedom. Even when the future existence and purpose of Warwick-BBC, Inc. became known to Rhedom, it continued to look towards the parent as the primary obligor on the lease. The credit and existence of the shell were all but disregarded. At this late date, Rhedom cannot in fairness assert that it bargained for two separate obligors. As the Bankruptcy Judge stated: "The Landlord wanted a lease on which Mammoth Mart was bound and that is what it got."

---

1. Warwick-BBC, Inc. became qualified to conduct business in Rhode Island on November 23, 1970. Significantly, this date is nine days after the lease and guarantee is dated. The shell corporation, organized in Delaware, has subsequently been liquidated into Bender's, Inc., which was in turn liquidated into Mammoth Mart of Massachusetts, Inc. Thus, the latter corporation is presently responsible for Warwick-BBC, Inc.'s lease obligations.

2. There was nothing unusual about this change of tenants. The vast majority of Mammoth Mart, Inc.'s lease obligations are formally held by thinly capitalized real estate subsidiaries. Mammoth Mart, Inc. normally acts as guarantor of these transactions.

Rhedom's lease is not unique among those held by other creditors of Mammoth Mart. Others have leased space to Mammoth Mart's real estate subsidiaries relying solely upon the credit and guarantee of the parent. Therefore, it would be inequitable in these consolidated proceedings to allow Rhedom two proofs of claim when other creditors, similarly situated, have been allowed just one.

Regardless of the number of claims Rhedom is allowed to make, its damages must be limited by Section 353 of the Act which restricts a landlord's recovery on a rejected executory lease contract ". . . to an amount not to exceed the rent, without acceleration, reserved by such lease for the three years next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid accrued rent, without acceleration, up to the date of surrender or reentry . . . ." 11 U.S.C. § 753.

If Rhedom is allowed to present one proof of claim as a result of the finding that the lease was substantially between Rhedom and Mammoth Mart, Inc., the provisions of Section 353 come directly into play. This result is consonant with ". . . the Congressional desire [underlying Section 353] to limit otherwise disproportionately large claims of landlords." *Fisher* v. *Lee Bros. Value World, Inc.,* 486 F.2d 1037 (9th Cir. 1973). This Congressional desire is *a fortiori* applicable where lease and guarantee are considered to be analytically separate. *Id.* at 1038, citing *Oldden* v. *Tonto Realty,* 143 F.2d 916, 920 (2nd Cir. 1944). There is no reason why a landlord, such as Rhedom, should be allowed to recover the statutory three years' rent against the lessee and then be allowed to collect, in addition, the remainder of the lease amount from the guarantor solely because it fortuitously signed separate agreements concerning the same building. If that result were tolerated, the ". . . guarantor . . . [would be] liable for more than his principal; that cannot be the meaning of [Section 353]; the guarantee is a secondary obligation and must be subject to the same limitations as the primary." *Hippodrome Bldg. Co.* v. *Irving Trust Co.,* 91 F.2d 753, 756 (2nd Cir. 1937). *Accord, In re Schulte Stores Corp.,* 105 F.2d 986 (2nd Cir. 1939).

The order of the Bankruptcy Court is hereby affirmed.

So ordered.