**In re EMPLE KNITTING MILLS, INC., Debtor.**

**Bankruptcy No. 88–10243.**

United States Bankruptcy Court, D. Maine.

Jan. 29, 1991.

Jacob A. Manheimer, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for Trustee.

J. Mark Fisher, Schiff Hardin & Waite, Chicago, Ill., for Landlord.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,[*]
Bankruptcy Judge.

Heard on November 2, 1990, on the "Landlord's[1] Motion to Estimate Claim" pursuant to Section 502(c), which claim is based upon a fifteen year lease agreement between Emple Knitting Mills, Inc. (the debtor), and the lessor on August 31, 1983.

On January 31, 1989, the Trustee of Emple rejected the subject lease, and argued that the rejection operated to terminate the lease agreement. That issue was litigated before Bankruptcy Judge Frederick Johnson, who, on February 23, 1990, issued a decision holding that "[t]he lease was not terminated by rejection, but rather breached by the trustee, and under Maine law and under the terms of the lease rent continues to accrue at the Landlord's option." (Memorandum of Decision, February 23, 1990, p. 9).

The narrow question at bench is whether the limitation on damages contained in Code Section 502(b)(6) applies to the lessor's rent claim.[2] The parties have stipulated that if § 502(b)(6) does apply, then the lessor will have a general unsecured claim in the amount of $103,500, and that if the limitation is not applicable, the lessor's claim will be in the amount of $1,200,000.

11 U.S.C. § 502(b)(6)

The parties' initial disagreement is with the interpretation of the language of the statute itself. Section 502(b)(6), entitled "allowance of claims or interests", provides, in pertinent part, that:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(6) if such claim is the claim of a lessor *for damages resulting from the termination of a lease of real property*, such claim exceeds—

. . . . .

11 U.S.C. § 502(b)(6) (emphasis added).

Based upon this language, the lessor argues that the phrase "damages resulting from termination," read in conjunction with Judge Johnson's ruling that a rejected lease is not per se terminated, is contradictory, and therefore § 502(b)(6)'s monetary limitation does not apply to its claim for future rent. In support of this position, the lessor relies on the Supreme Court decision *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), which requires that, absent some ambiguity, the language in a statute be interpreted according to its "plain meaning," and without reference to legislative history or case law.

The Trustee objects to such a strict limitation on the court's review power, and correctly points out the exception to the "plain meaning rule" where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Ron Pair*, 489 U.S. at 242, 109 S.Ct. at 1031 (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564,

---

[*] For the District of Rhode Island, sitting by designation.

1. Paul Emple, Helen Honig and Margaret D. Emple collectively constitute the "lessor" in this matter.

2. The lessor seeks recovery of the remainder of rent due under the lease, which runs until August 31, 1998.

571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Arguing in favor of the exception, the Trustee states that "[a] fair reading of the statute, legislative history and case law requires a holding that the Landlord's claim is, indeed, subject to the Section 502(b)(6) limitation." (Trustee's Memorandum in Respect of Landlord's Motion to Estimate Claim, October 5, 1990, p. 5).

Although we agree that the relevant language of § 502(b)(6) is *unambiguous,* and therefore should ordinarily be afforded its plain meaning, this proposition does not result in a ruling favorable to the lessor.[3]

## REJECTION

### 1. *The intent of the drafters*

In determining whether the limitation contained in § 502(b)(6) applies to the lessor's present rent claim, we must first consider the legal consequence of the Trustee's rejection of the lease in question.

Initially, we are directed to § 365(g), which provides that:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition;

The obvious purpose of this provision of the Code is to provide the nondebtor contracting party with a breach of contract action for the rejection of an executory contract or unexpired lease. Both the case law and legislative history make clear that this remedy was provided to relieve the nondebtor party from the harshness associated with rejection. *See, e.g., Oldden v. Tonto Realty Corp.,* 143 F.2d 916 (2d Cir. 1944); S.Rep. No. 989, 95th Cong.2d Sess. 62–65 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5848–5851; *In re Picnic 'N Chicken, Inc.,* 58 B.R. 523

(Bankr.S.D.Cal.1986). "[O]ne of the primary purposes of the original statute allowing landlords' claims with some limitations was to help landlords, not hurt them. Prior to the 1934 amendments of the Bankruptcy Act of 1898, landlords had no provable claim for rent accruing after the trustee's rejection of a lease. The claim for future rent was not discharged and the landlord did not share in the distribution." *In re Danrik, Ltd.,* 92 B.R. 964, 968–69 (Bankr.N.D.Ga.1988). Previously, "[t]he tenant's bankruptcy removed all his assets from the reach of the landlord and left, as the latter's *only* remedy, suits against an empty corporate shell or a destitute individual." *Id.* at 969 (citing *Kuehner v. Irving Trust Co.,* 299 U.S. 445, 453, 57 S.Ct. 298, 302, 81 L.Ed. 340 (1937)) (emphasis added). Thus, the legislature enacted various code provisions[4] intended to "compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate." S.Rep. No. 989, 95th Cong.2d Sess 63 (1978), U.S.Code Cong. & Admin.News 1978, p. 5849.

### 2. *The legal effect of rejection*

Based upon our analysis of the present dispute, the real inquiry is not whether the application of § 502(b)(6) violates the plain meaning rule, but rather, whether the lessor has any claim against the estate prior to the lease being terminated. In order to decide this question, we must consider the legal effect of the Trustee's rejection of the subject lease.

We find the decisional authorities to uniformly hold that the Code limits a lessor's claim *against the bankruptcy estate* following rejection. For example, the Fifth Circuit Court of Appeals explained that rejection does not destroy *the leasehold estate,* but rather, "[t]hat action merely placed the leasehold outside of the bankruptcy administration without destroying the underlying estate" *Commercial Trad-*

---

**3.** Based upon our ruling herein, we need not, and do not, decide whether the exception to the plain meaning rule should apply.

**4.** *See e.g.* §§ 365(g), 502(b)(6) and 502(g).

*ing Co., Inc. v. C. Lansburgh (In the Matter of Garfinkle),* 577 F.2d 901 (5th Cir. 1978). In *In re Picnic 'N Chicken, Inc.,* 58 B.R. 523 (Bankr.S.D.Cal.1986), the court agreed with the Fifth Circuit that "rejection of the lease did not by itself terminate the lease, but merely had the effect of removing the lease from the estate." *Id.* at 526.

Recently, the Eighth Circuit in *In re Modern Textile, Inc.,* 900 F.2d 1184 (8th Cir.1990), considered the same code sections presently before us, and, in holding that the trustee's rejection did not operate to discharge the guarantors on the lease, remarked, correctly we believe, that "[a]lthough the Bankruptcy Code limits the amount which a lessor can claim against the debtor's bankruptcy estate following the Trustee's rejection of an unexpired lease, *see* 11 U.S.C. § 502(b)(6)(A) and (B), that limitation does not operate to cut off and extinguish the lessor's claim for amounts in excess of the amount chargeable to the debtor's estate.... [T]hus, the lessor can still look to the person or entity that guaranteed the debtor's lease obligations." *Id.* at 1191.

Although it is not specifically stated, we believe that the clear implication to be drawn from the foregoing decisions is that the Trustee's rejection of an unexpired lease restricts the lessor's recovery *against the estate* to a damage claim based upon breach of contract, which claim is subject to the limitation contained in § 502(b)(6). *See, e.g., F.E. Schwartz v. C.M.C., Inc. (In re Communicall Cent., Inc.),* 106 B.R. 540, 543 (Bankr.N.D.Ill.1989) ("[I]f an unexpired lease is rejected after the commencement of a case, it gives rise to a claim for damages sustained by the landlord, provided that there has not been a previous assumption by the trustee. The allowable amount for claims for damages resulting from re-

jection of same is limited by the provisions contained in section 502(b)(6)."); *Bel–Ken Associates Limited Partnership v. Clark,* 83 B.R. 357, 358 (D.Md.1988) ("11 U.S.C. § 502(b)(6), sets a limitation on a landlord's claim against a bankrupt-lessee's obligation under a lease of real property. This limitation, or cap, comes into play once the bankruptcy trustee rejects the lease under 11 U.S.C. § 365(a)").

Accordingly, we hold that once the lease is rejected, the lessor's claim against the estate is limited to one for damages for breach of contract. Our ruling herein is not a departure from Judge Johnson's holding that the lessor retains the option, under state law and according to the terms of the lease, of not terminating the lease and rendering *the tenant* liable for future rents—but such a claim is not enforceable against the bankruptcy estate. "It should be noted ... that making a claim in bankruptcy does not necessarily result in the relief sought. Bankruptcy alters a creditor's state law power to enforce his claims against the bankruptcy estate." *Lindermuth v. Myers,* 84 B.R. 164, 167 n. 2 (D.S.D.1988). Thus, the lessor has the choice of: (1) not terminating the lease and seeking payment of future rents from "the tenant" or from any person or entity that has guaranteed the debtor's lease obligations; or (2) to terminate the lease and file a claim in the bankruptcy estate for damages, which claim will be subject to the § 502(b)(6) limitation.[5]

Accordingly, for the foregoing reasons, the Landlord's Motion to Estimate Claim is DENIED.[6]

Enter Judgment consistent with this opinion.

---

**5.** Although the lessor argues to the contrary, we believe that Judge Johnson's decision in fact suggests this result when he said, "[h]owever, the proof was filed one day prior to expiration of the time for filing proofs, and was obviously filed by the landlord as a precautionary measure, in the event the landlord ultimately declared the lease terminated and wished to assert

a claim for damages under section 502(b)(6) of the Code." (Memorandum of Decision, February 23, 1990, p. 8).

**6.** Because the lessor has not yet terminated the lease, we are unwilling, at this time, to rule that its claim is in the amount of $103,500.