In re FIRST ALLIANCE
CORPORATION,
Debtor.

RANCHO BERNARDO LIMITED
PARTNERSHIP, Appellant,

v.

FIRST ALLIANCE CORPORATION,
Appellee,

The Hahn Company and JMB Property
Management Company, Appearing
as Amicus Curiae.

BAP No. SC–91–1555–VAsR.

Bankruptcy No. 88–8357–LM11.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 20, 1992.

Decided May 27, 1992.

Dennis J. Wickham, San Diego, Cal., for Rancho Bernardo.

Alan J. Bot, San Diego, Cal., for First Alliance.

Before VOLINN, ASHLAND and RUSSELL, Bankruptcy Judges.

OPINION

SIDNEY C. VOLINN, Bankruptcy Judge:

OVERVIEW

In 1988 First Alliance Corporation (First Alliance) and Rancho Bernardo Limited Partnership (RBLP) entered into a five year lease agreement which provided that First Alliance would receive certain rent credits resulting in a substantial rent decrease for the first twelve months of the term. Six months after entering into the lease, First Alliance filed for bankruptcy. With the concurrence of RBLP, the Debtor continued to occupy the premises and make payments for an additional four months. The bankruptcy court, applying 11 U.S.C. § 502(b)(6),[1] awarded RBLP one year's rent due under the agreement from the date of the bankruptcy filing, less First Alliance's security deposit and post-petition rent payments. We reverse.

FACTUAL AND PROCEDURAL
BACKGROUND

First Alliance and RBLP entered into a lease agreement on April 1, 1988. The original agreement specified a $21,618.30 monthly payment for a five year term plus a $21,618.30 security deposit. On April 6,

---

**1.** All references are to sections of 11 U.S.C. § 101, *et seq.*, unless otherwise specified.

In pertinent part § 502(b)(6) places a limit on damages which a landlord may obtain in the event of a breach of a lease by a debtor:

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15

percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) The date of the filing of the petition
. . . .

1988, by a Modification Letter landlord RBLP granted rent credits equal to one-half the monthly rent for the first 11 months of the term plus one-third the monthly rent for the twelfth month.

The parties agree that First Alliance timely made the required monthly payments for a period of five months. On October 28, 1988 First Alliance filed for Chapter 11 protection, but continued to occupy the premises during November and December of that year and paid $10,809.15 in rent for each of the two months.

The parties have stipulated that because it did not move to assume within the required 60 day period under 11 U.S.C. § 365(d)(4), First Alliance rejected the lease as of December 28, 1988. In early January 1989, however, First Alliance and RBLP entered into another agreement in which RBLP allowed First Alliance to remain on the premises through the end of February 1989 at a monthly rental of $21,618.30. Accordingly, First Alliance paid a total of $64,854.90 in post-petition payments. It neither occupied the premises nor made further lease payments after February 28, 1989.

Subsequently, RBLP filed a claim for $237,800.00 for damages attributable to the rejection of the lease—twelve monthly payments of $21,618.30 less First Alliance's $21,618.30 security deposit. In its Order and Memorandum Decision, *In re First Alliance Corp.*, 126 B.R. 589 (Bankr.S.D.Cal. 1991), the bankruptcy court, applying 11 U.S.C. § 502(b)(6), awarded RBLP $100,-957.46—six monthly payments of $10,-809.15 each plus one payment of $14,484.26 plus five monthly payments of $21,618.30 each, less the $21,618.30 security deposit less the $64,854.90 in post-petition payments. RBLP, joined by The Hahn Company, a major shopping center developer, and JMB Property Management Company, a large property management company, as amici, appeals.

## ISSUE PRESENTED

The issue for the Panel is whether the bankruptcy court erred in factoring a credit for post-bankruptcy rent payments in its calculation of RBLP's damages pursuant to § 502(b)(6).

## STANDARD OF REVIEW

■ Proper interpretation of statutory language is a question of law. An appellate court subjects such a trial court's interpretation to *de novo* review. *In re Quintana,* 915 F.2d 513, 515 (9th Cir.1990).

## DISCUSSION

The parties and amici agree that § 502(b)(6) provides the starting point for analysis of the bankruptcy court's decision. Further, all agree that without that section of the Bankruptcy Code, California state law and the terms of the lease agreement would determine the level of damages for rejection of the lease. The bankruptcy court found that under California law, damages would exceed $1 million. The parties do not dispute that § 502(b)(6) necessarily reduces that figure. They have stipulated also that the § 502(b)(6)'s 15% provision does not apply here. Thus, on the facts before us, the dispute centers on the amount reserved without acceleration in the lease for one year from the date of the filing of the petition.

The trial court found that under California law RBLP's damages exceeded $1 million. It ruled, however, that § 502(b)(6) places as a limit on the damages the amount reserved in the lease for one year subsequent to the date of the bankruptcy filing. Neither party disputes this ruling. The court then noted that the lease contract as altered by the April 6, 1988 Modification Letter provides that for the first year of the lease, First Alliance would receive $129,709.80 in rental credits. Because First Alliance had made five monthly payments prior to the filing, so the court reasoned, seven months worth of rental credits remained according to the schedule below.

| | |
|---|---|
| 11/88 | $10,809.15 |
| 12/88 | $10,809.15 |
| 1/89 | $10,809.15 |
| 2/89 | $10,809.15 |
| 3/89 | $10,809.15 |
| 4/89 | $10,809.15 |
| 5/89 | $ 7134.04 |
| Total | $71,988.94 |

It follows that one year's gross rent reserved under the lease, computed at the rate of $21,618.30 per month, amounts to $259,419.60. Applying the rental credits and the $21,618.30 security deposit, the latter of which both parties agree should be deducted, leaves a § 502(b)(6) maximum of $165,812.36. Although one could arrive at other figures for the amount reserved in the lease, we cannot say that the trial court's finding in this respect is erroneous. Therefore, the amount reserved in the lease for the year subsequent to filing the petition, less the $21,618.30 security deposit, is $165,812.36.

▮ The question remains, however: what should become of the $64,854.90 in post-petition rent payments? The trial court viewed the payments as credits, reasoning that otherwise a debtor who ceased making rent payments after filing would be in a better position than one like Appellee who made post-petition payments.

Appellant and amici contend that the proper calculation of the amount involves a $21,618.30 monthly payment for twelve months less only First Alliance's security deposit. Appellant accepts the ruling giving Appellee credit for the security deposit, but contends that credit for post-petition rent payments was improper. Thus, the issue presented is whether rent for post-petition occupancy is encompassed by § 502(b)(6). Of those cases that address the issue, most hold that post-petition rent payments are not deductible: *In re Atlantic Container Corp.,* 133 B.R. 980, 989 (Bankr.N.D.Ill.1991); *In re Conston Corp., Inc.,* 130 B.R. 449, 453 (Bankr.E.D.Pa. 1991); and *In re McLean Enterprises, Inc.,* 105 B.R. 928, 937 (Bankr.W.D.Mo. 1989). *But see In re Stewart Properties, Inc.,* 41 B.R. 353 (Bankr.D.Hawaii 1984), allowed post-petition payments as deductions.

We conclude that the trial court's reasoning is flawed in this respect. § 503(b)(1)(A) indicates that claims for administrative expenses are allowed for "actual, necessary costs and expenses of preserving the estate...." Because under § 365(d)(3) post-petition rents qualify as such a necessary expense,[2] a lessor who did not receive post-petition payments for occupancy from the debtor prior to the rejection of the lease would have an administrative claim against the estate under § 507(a)(1). Further, if the debtor made no payments after rejection and continued to occupy the premises afterwards, the inclusive language of § 503(b)(1)(A) would enable the lessor's § 507(a)(1) claim for administrative rent for the post-rejection occupancy period. Consequently, the debtor in the trial court's hypothetical would be potentially liable for post-petition rents as well as damages under § 502(b)(6). In any event, there is legislative history in § 502 itself evidencing a specific intention that rents for occupancy become the basis for an administrative claim which is entitled to first priority under § 507(a)(1). In this connection the trial court noted this legislative history, as follows:

> The legislative history of § 502(b)(6) states that "this subsection does not apply to limit administrative expense claims for use of the leased premises to which the landlord is otherwise entitled." House Report at 6309–6310.

*In re First Alliance* at 592.

It is clear that the landlord has a high priority claim against the estate for post-bankruptcy rent. Post-petition payments have no relevance to a claim for rejection or breach of the pre-bankruptcy lease agreement. There may be cases where there will be no damage following rejection or breach but that issue is not before us on the facts presented here. Consequently, we cannot agree with the trial court's conclusion that post-petition rents qualify as credits in a § 502(b)(6) action.

## CONCLUSION

We conclude that the court erred in crediting post-petition rents against the § 502(b)(6) maximum level of damages

---

**2.** § 365(d)(3) provides:

> The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected....

**534**

available to the lessor for rejection by the debtor of the pre-bankruptcy lease. The proper amount of RBLP's claim pursuant to 11 U.S.C. § 502(b)(6) is $165,812.36. Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.