**In re FINANCIAL NEWS NETWORK, INC., Debtor.**

**Bankruptcy No. 91–B–10891 (FGC).**

United States Bankruptcy Court, S.D. New York.

Jan. 6, 1993.

R.B. Krakow, of Gibson Dunn & Crutcher, New York City, for Financial News Network, Inc. (Debtor).

M.F. Carlin, of Andrews & Kurth L.L.P., New York City, for 6701 Center Drive West (Landlord).

## MEMORANDUM OF DECISION ON DEBTOR'S OBJECTION TO CLAIM FOR DAMAGES UNDER § 502(b)(6)

FRANCIS G. CONRAD *, Bankruptcy Judge.

Debtor's objection to Landlord's claim requires us to decide[1] whether rent paid post-petition but pre-rejection must be deducted from the § 502(b)(6)[2] cap on damages allowable for termination of a lease after rejection. We hold that post-petition rents are not deducted in determining the amount of allowable damages under § 502(b)(6).

Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on March 1, 1991. At the time of filing, it was

---

* Sitting by special designation to the Southern District of New York.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (B). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

2. All statutory references are to the U.S. Bankruptcy Code, Title 11 U.S.C.A., unless otherwise stated.

a tenant of commercial office space and parking facilities owned by Landlord in Los Angeles, Calif., under a written "Standard Form Office Lease," dated July 13, 1987, and a "Reserved Parking Agreement," dated July 27, 1987. The lease term ran from February 29, 1988 to February 27, 1996. Debtor paid rent post-petition through January, 1992. The lease was rejected as of January 26, 1992. Landlord promptly relet the premises at a reduced rent beginning in February 1992. Landlord filed a proof of claim for $1,830,121.72 on April 24, 1992, to which Debtor brings this objection. Landlord, in the pleadings before us, now seeks allowance of $1,797,214.26.

Debtor asserts that Landlord must deduct from its $1.8 million claim the $1.5 million in post-petition rent paid by Debtor prior to rejection. We hold that the structural framework created by the statutory sections through which the parties must pass to get to the issue of allowance under § 502, the plain language of § 502 itself, and the weight of reasoned authority, require us to overrule Debtor's objection.

 We begin by considering the statutory context within which the issue *sub judice* arises. As debtor-in-possession, Debtor has "all the rights ... and shall perform all the functions and duties" of a trustee. § 1107(a). Among those rights is, "subject to the court's approval, [to] assume or reject any ... unexpired lease of the debtor." 11 U.S.C. § 365(a). A corresponding duty is to

> timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected....

11 U.S.C. § 365(d)(3). The effect of this provision is to ensure that no damages accrue until after the lease is rejected. For purposes of allowance, however, Congress has mandated that

> the rejection of an ... unexpired lease of the debtor constitutes a breach of such ... lease—
>
> (1) if such ... lease has not been assumed under this section or under a plan confirmed under chapter ... 11

> ... immediately before the date of the filing of the petition....

Thus, as we have previously held, upon rejection "a rejected contract is actually breached, and the breach is deemed to have occurred immediately preceding the bankruptcy filing." *Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 138 B.R. 687, 707 (Bkrtcy.S.D.N.Y.1992). The result of deeming a post-petition breach to have occurred prepetition is, absent security, to give the non-debtor party a general unsecured claim. Debtor's position would require that we deduct from Landlord's claim for damages rents paid to Landlord before the lease was ever breached by rejection and any claim for damages arose. We believe that if Congress had in fact intended such a strange result it would, in some manner, have said so. We find nothing in the Bankruptcy Code or its legislative history to suggest that Congress intended to subtract from harm suffered tomorrow the amounts paid yesterday.

What we do find in § 502(b)(6) is a cap on the amount of the post-rejection damages actually suffered that may be allowed:

> [I]f ... objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—....
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>
> (i) the date of the filing of the petition; and,
>
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property....

 The plain language of § 502(b)(6) merely limits the allowable amount of a landlord's claim for actual damages arising

from termination of a lease, using a formula that references the lease itself. Nothing in the statute suggests that Debtor's post-petition performance is to have any impact on the calculation of the maximum amount of allowable damages. Rather, Debtor's rent payments for post-petition occupation are properly considered in computing total damages, to which the § 502(b)(6) cap is then applied. If, for example, five years remained on a lease at the time a petition was filed, and a debtor paid rent for one year post-petition and then rejected the lease, the landlord's total claim could only cover the rent due for the four remaining years of the lease term.

Landlord's computations here have accounted for Debtor's post-petition rent payments in just this manner. Landlord computed its total rejection damages of $4,867,-518.26 by first calculating the total rent it would have received from Debtor under the lease for the term remaining after rejection, the period from February, 1992, through February, 1996. To that amount, Landlord added its costs of reletting the premises and subtracted the reduced rent to be received from the new tenant. Thus, Landlord properly accounted for Debtor's post-petition rent payments in its computation of its total damages.

■ Debtor's theory would require the Landlord to deduct post-petition rent payments a second time, in computing the maximum allowable damages under § 502(b)(6). We hold, however, that Landlord correctly calculated its maximum allowable damages under the cap. To determine the allowable amount of its total rejection damages under § 502(b)(6), Landlord first calculated the total rents due under the lease from March 1, 1991, through the end of the lease to be $11,981,-428.43.[3] It then determined that 15 percent of that total—$1,797,214.26—was greater than the rent reserved for one year following Debtor's filing—$1,608,768.30. After determining that the 15 percent did

not exceed the rent reserved for three years following filing—$4,854,087.02, Landlord settled on $1,797,214.26 as the allowable amount of its total rejection damages. We concur, and will allow Landlord's claim in that amount, because Debtor's argument for deducting post-petition rents from allowable damages is factually flawed, logically unsound, and based on bad precedent.

■ Debtor's argument begins with the proposition that the rent reserved for one year after its filing is greater than 15 percent of the rent reserved for the term remaining after filing. This proposition, as appears from the preceding computations, is simply not true. But assuming that it was, Debtor would then have us subtract the amount of its post-petition rent payments from the rent reserved for one year. It claims that the plain language of § 502(b)(6) mandates this result because it measures allowable damages from the "earlier of" the date of filing or surrender. A ruling that post-petition rent payments should not be credited, Debtor argues,

> would, in effect, rewrite § 502(b)(6) to allow damages for rent running from the *later* of the filing of the petition or surrender of the leased property. If the statute were so worded, the landlord would plainly have an administrative claim for the period prior to surrender and a general unsecured claim for one year or 15 percent following surrender.

Debtor's "Brief in Support of Debtor's Motion for Order Sustaining Objection to Proof of Claim of 6701 Center Drive West," p. 4. This argument fails for several reasons. First, it ignores the fact that Landlord's claim is only for post-rejection damages, which did not even accrue until after Debtor's post-petition rent payments. Indeed, Landlord suffered no damages from March 1, 1991 until February 1992, the first month after rejection. Second, the statute was not intended to measure damages, but to cap them. HR Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977),

---

**3.** Landlord began its computations with March 1, 1991, the date Debtor filed, because it is, in this case, "the earlier of" the two alternative beginning points specified by § 502(b)(6)—"the date of the filing" or "the date on which such lessor repossessed or the lessee surrendered, the leased property."

U.S.Code Cong. & Admin.News 1978, pp. 5787, 6309, *reprinted in* App.2 *Collier on Bankruptcy*, II. HR Rep. 595 (15th ed. 1992) ("allowed claim is for ... total damages, as limited by" § 502(b)(6)). Thus, the cap on damages "is dictated by the terms of the lease, not the debtor's performance." *In re Conston Corp.*, 130 B.R. 449, 453–54 (Bkrtcy.E.D.Pa.1991). Moreover, even if (a) we agreed with Debtor that the computation of the rent reserved for one year following its filing must deduct post-petition rents paid during that period, and (b) Debtor was correct that the one-year option prior to deduction of post-petition rents was greater than the 15 percent option, it would avail Debtor nothing. Deducting post-petition rents from the rent reserved for one year would make the one-year option less than the 15 percent option, and Landlord is entitled to the greater of the two, which is the amount we have determined to allow. Third, both the structure of the Code and the legislative history evince a clear Congressional intent to allow landlords what Debtor argues they shouldn't have—both an administrative claim[4] for the post-petition, pre-rejection use of the premises, and a general unsecured claim for rejection damages. The structural ground for this holding was noted above. The legislative history is unequivocal: § 502(b)(6) "does not apply to limit administrative expense claims for use of the leased premises to which the landlord is otherwise entitled." HR Rep No. 95–595, 95th Cong., 1st Sess. 353 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6309 reprinted in App. 2 *Collier on Bankruptcy*, II. HR Rep. 595 (15th ed. 1992).

Finally, Debtor's precedent is unsound. Debtor cites two cases, both from the Ninth Circuit, that have adopted the approach it urges. *In re Stewart's Properties, Inc.*, 41 B.R. 353, 355 (Bkrtcy.D.Haw. 1984) held that lessors were entitled to "rent for one year from the date of filing of the petition, minus administrative rent previously paid." It appears from the Court's discussion that lessors themselves made the deduction in their proof of claim, so that the issue was not squarely before the Court. We note also that the Court characterized § 502(b)(6) as "a formula for calculating damages when a lessor files a claim for termination of a lease." That is, we believe, incorrect, and suspect that the error led to an erroneous conclusion. As we have held earlier in this Memorandum, we believe that the statutory language and its legislative history make it quite clear that § 502(b)(6) is not a formula for calculating damages, but is rather a cap on damages calculated under the lease.

Debtor's second case, *In re First Alliance Corp.*, 126 B.R. 589, 591 (Bkrtcy. S.D.Cal.1991), correctly noted that

> § 502(b)(6) provides no formula for ascertaining the allowable damages.... It merely qualifies and limits the lessor's claim to a maximum. Ultimately, the amount of the claim is to be determined by the court in accordance with state law and the contract between the parties.

(Citations omitted.) The Court nonetheless held, citing *Stewart's Properties*, that

> post-petition rent payments should also be deducted from ... [the] maximum allowed claim. If post-petition rental payments were not subtracted from the maximum allowable claim, a debtor who ceased payment of rent immediately upon filing a bankruptcy petition would be in a better position than a debtor who fulfilled his duties under § 365(d)(3). Such a result could not have been intended.

*Id.*, at 592. We are not persuaded that landlords should be deprived of their statutory rights because debtors might not do what Congress said they must do—"timely perform all the obligations ... under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." § 365(d)(3). Also not persuaded was

---

4. Indeed, a landlord's position under § 365(d)(3) is stronger than that of other administrative claimants, because, pre-rejection, it may rely on the terms of its lease, without having to establish that the obligations thereunder are "actual, necessary costs and expenses of preserving the estate." § 503(b)(1)(A). *In re Mainstream Access, Inc.*, 134 B.R. 743, 749 (Bkrtcy.S.D.N.Y.1991); *In re Wingspread Corp.*, 116 B.R. 915, 925–26 (Bkrtcy.S.D.N.Y.1990).

the Bankruptcy Appellate Panel, which reversed on appeal, holding, "Post-petition payments have no relevance to a claim for rejection or breach of the pre-bankruptcy lease agreement." *In re First Alliance Corp.*, 140 B.R. 531, 533 (9th Cir.BAP1992). The Panel concluded that §§ 365(d)(3) and 503(b)(1)(A) give lessors an administrative claim for post-petition use and occupancy under § 507(a)(1), in addition to a claim for damages for termination of the lease under § 502(b)(6). We understand the Panel's decision to have overruled not only the Bankruptcy Court in *First Alliance*, but also, by extension, the Court in *Stewart's Properties. See, In re Proudfoot*, 144 B.R. 876, 879 (9th Cir.BAP1992) ("BAP decisions originating in the Ninth Circuit are binding precedent on all bankruptcy courts within the Ninth Circuit in the absence of contrary authority from the district court for the district in which the bankruptcy court sits.").

Although few in number, all reported decisions on the issue that we have found, except the two Ninth Circuit Bankruptcy Court decisions relied on by Debtor, have reached the same result as we have. *In re Bob's Sea Ray Boats, Inc.*, 143 B.R. 229, 231 (Bkrtcy.N.D.1992) ("Any rents received in consequence of re-letting are not ... applied toward satisfaction of the section 502(b)(6) claim after making the statutory calculations, rather such payments are deducted from the landlord's total actual lease termination damages, before the section 502(b)(6) cap is applied."); *In re Atlantic Container Corp.*, 133 B.R. 980, 990 (Bkrtcy.N.D.Ill.1991) ("The post-petition rent and post-petition use and occupancy payments should not be applied against the Landlord's maximum allowable lease termination claim under § 502(b)(6)."); *In re Conston Corp., Inc.*, 130 B.R. 449, 453–54 (Bkrtcy.E.D.Pa.1991) ("As we read § 502(b)(6), it sets forth a mechanical method for calculating the landlord's maximum damages, which is dependent only upon the terms of the parties' lease, not upon the particular post-petition behavior of a debtor-tenant.... Therefore ... the debtor's post-petition rent payments may not be deducted on application of § 502(b)(6)."); *In re McLean Industries*, 105 B.R. 928, 937 (Bkrtcy.W.D.Mo., S.D.1989) (Court allowed Landlord's claim, which included both post-petition administrative expenses and lease termination damages.); *In re Goldblatt Bros.*, 66 B.R. 337, 347–48 (Bkrtcy.N.D.Ill., E.D.1986) (Rents received from new tenants reduced the damages Landlord would otherwise have suffered. Debtor "cannot get a second credit for that rent by deducting it from the statutory maximum."). *See also, In re Allegheny International, Inc.*, 145 B.R. 823, 828 (W.D.Pa.1992) ("Congress intended the phrase 'remaining term' to be a measure of time, not rent.").

Counsel for Landlord, on ten days' notice, shall settle an order consistent with the views expressed in this Memorandum of Decision.