### In re ALL FOR A DOLLAR, INC., Debtor.

### Bankruptcy No. 94–42917–HJB.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 23, 1996.

Joseph A. Reinhardt, Springfield, MA, for debtor.

Thomas C. Walsh, Boston, MA.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the Debtor's Objection to Claim of Yale Fall River Trust. The issue presented is the proper interpretation of 11 U.S.C. § 502(b)(6).[1] Specifically, the Court must determine whether postpetition rentals received by a landlord should be deducted from the landlord's overall claim for damages or from the statutory cap imposed by § 502(b)(6). The question appears to be of first impression in the District.

### I. FACTS

The facts are not in material dispute.

On June 24, 1994, All For a Dollar, Inc. (the "Debtor") filed a petition in this Court under Chapter 11 of the Bankruptcy Code. At the time of its filing, the Debtor operated 166 stores in various states and, in conjunction with its reorganization efforts, determined to "downsize" to 113 stores. Pursuant to an Order of this Court, dated September 9, 1994, the Debtor rejected, effective October 18, 1994, a certain lease (the "Lease") of store space in the Harbour Mall in Fall River, Massachusetts (the "Store Space"), pursuant to the provisions of 11 U.S.C. § 365. Under the terms of the Lease, the Debtor had been obligated to make monthly payments of rent, as well as pay its proportionate share of common area maintenance charges, taxes and a promotions fee. The Lease term of five years was set to expire on May 31, 1997.

On October 31, 1994, Yale Fall River Trust ("Yale"), the lessor, filed a proof of claim asserting an unsecured claim in the amount of $58,355.85. Of this amount, $5,306.85 represented its claim for rent and other charges accrued prepetition. The balance of its claim, $53,049.00, represented its total lease termination damages of $137,043.25, reduced to the statutory cap mandated by § 502(b)(6).

Commencing November 1, 1994, Yale rented the Store Space to a new tenant for the sum of $2,500 per month. However, the

---

1. Section 502(b)(6) provides in relevant part:

    (b) ... if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

    . . . . .

    (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

    (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
    (i) the date of the filing of the petition; and
    (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
    (B) any unpaid rent due under the lease, without acceleration, on the earlier of such dates;
    11 U.S.C. § 502(b)(6).

rental term was only on a month-to-month basis. Yale had not yet located a permanent tenant for the Store Space (and expressed its pessimism for a change in the foreseeable future). As of April, 1995, the new tenant had paid a total sum of $12,500 (5 months) and was continuing to occupy the property.

The Debtor maintains that Yale must reduce its statutorily capped claim by the amount received from the new tenant. There was no dispute as to the total amounts owing under the Lease. The only issue was whether the mitigation recovery by Yale should be applied against the gross claim of Yale ($137,043.25) or against its statutorily capped claim ($53,049.00). After hearing counsel for the Debtor and Yale, the Court granted each a further opportunity to file briefs and took the Debtor's objection under advisement.

## II. *DISCUSSION*

The Debtor argues that the postpetition rentals received by Yale should be deducted from Yale's capped claim because § 502(b)(6) represents a limitation on damages. In support, the Debtor points to the section's legislative history. That legislative history, found in the 1973 Report of the Commission on the Bankruptcy Laws of the United States, as well as in both the House and the Senate bills, uniformly voices support and approval of the holding of *Oldden v. Tonto Realty Corp.*, 143 F.2d 916 (2nd Cir.1944). *See Report of Comm. on the Bankr. Laws of U.S.*, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., pt. 2, at 100, 106 (1973); H.Rep. No. 95–595, 95th Cong., 1st Sess. 353–54 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 63–64 (1978).

*Oldden* was decided under the Bankruptcy Act of 1898 (the "Bankruptcy Act"), as amended. In *Oldden,* the landlord held a security deposit. The issue before the court was whether the landlord was required to deduct the amount of security deposit from its total damage claim or from its claim as statutorily capped under Section 63(a)(9) of the Bankruptcy Act, as amended in 1934.[2] That amendment had effected a statutory estimation of lease termination damages, while limiting the size of the lease termination claim. In reaching its decision, the court reviewed the history of the allowance of lease rejection damage claims. The court ultimately concluded that Section 63(a)(9) of the Bankruptcy Act represented a compromise between the interests of landlords whose claims required estimation in order to ensure their provability and the need to prevent large lease termination claims from presenting an insurmountable obstacle to the debtor's rehabilitation or causing other creditors to incur a disproportionate dilution of their dividend. *Oldden,* 143 F.2d at 916–920. The court specifically recognized the wisdom in treating lease rejection claims differently from other claims, and noted:

> . . . allowance in full of such claims did not seem the appropriate answer, since other general creditors would suffer proportionately, and the claims themselves would often be disproportionate in amount to any actual damage suffered, particularly in the event of a subsequent rise in rental values. In truth, the landlord is not in the same position as other general creditors, and there is no very compelling reason why he should be treated on a par with them. For, after all, he has been compensated up until the date of the bankruptcy petition, he regains his original assets upon bankruptcy, . . . and the unexpired term in

---

**2.** Section 63(a)(9) of the Bankruptcy Act of 1898 was amended in 1934 to provide in relevant part: Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . (9) claims for anticipatory breach of contracts, executory in whole or part, including unexpired leases of real or personal property: *Provided, however,* That the claim of a landlord for damages for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no

event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after bankruptcy, plus an amount equal to the unpaid rent accrued, without acceleration, up to such date . . .
Bankruptcy Act of 1898 § 63(a)(9), 11 U.S.C. § 103(a)(9) (1934) (repealed 1978).

no way really benefits the assets of the bankrupt's estate.

*Id.* at 920.

The *Oldden* court concluded that a security deposit should be deducted from the cap, reasoning that a contrary result would allow landlords to "flaunt" the statutory limit on lease termination claims and obtain a treatment different from the one intended by Congress. The ability to apply the security deposit against the capped claim, rather than suffering a dividend on all of the capped claim, was deemed a sufficient benefit of the landlord's foresight in seeking the security deposit. *Id.* at 920–21.

The legislative history of § 502(b) of the Bankruptcy Code teaches that Congress had *Oldden* very much in mind when fashioning the new standards for allowance of lease termination claims. The House and Senate Reports read in relevant part:

> The history of this provision is set out at length in *Oldden v. Tonto Realty Co.* ... It is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate. The damages a landlord may assert from termination of a lease are limited to the rent reserved for the greater of one year or ten percent of the remaining lease term, not to exceed three years, after the earlier of the date of the filing of the petition and the date of surrender or repossession. The sliding scale formula is new, is designed to protect the long-term lessor, and is included as a replacement of the dual provisions in current law of a three-year test for reorganization cases and a one-year test for liquidation cases. This subsection does not apply to limit administrative expenses claims for use of the leased premises to which the landlord is otherwise entitled.
>
> This paragraph will not overrule *Oldden*, or the proposition for which it has been read to stand: to the extent that a landlord has a security deposit in excess of his claim allowed under this paragraph, the excess comes into the estate.... [The] security

deposit will be applied in satisfaction of the claim that is allowed under this paragraph.

H.Rep. No. 95–595, 95th Cong., 1st Sess. 353–54 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 63–64 (1978).

The Debtor here asks the Court to extend the same *Oldden* case with which the 95th Congress found so much favor to the Debtor's contention that the postpetition rentals by Yale should be deducted from its statutorily capped claim. Unfortunately for the Debtor, that extension is not justified.

First, relying on the most obvious distinction, the *Oldden* case related to security deposits and not postpetition rentals. Admiration of *Oldden* by the 95th Congress was specifically limited to the case's holding relative to the application of security deposits.

Second, the Debtor's argument does not fully appreciate the elements of the legislative compromise whose history was so thoroughly reviewed by *Oldden.* That compromise sacrificed the precise calculation of contingent future rentals in favor of the benefits of a quickly calculable estimated claim. The vicissitudes of those future rentals, both in good and bad fortune, is *already* reflected in the compromise which is now the cap of § 502(b)(6). To reduce the cap by the amount of postpetition rental would be to reduce the lease termination damages a second time for the same credit. *In re Goldblatt Bros., Inc.,* 66 B.R. 337, 347 (Bankr.N.D.Ill.1986).

Third, in its intention to specifically except from reduction any postpetition administrative expense claims, the legislative history of § 502(b)(6) signals Congress' intention not to reduce the statutory cap by postpetition rentals and not to categorize security deposits and postpetition rentals together. *See Rancho Bernardo Ltd. Partnership v. First Alliance Corp. (In re First Alliance Corp.),* 140 B.R. 531, 533 (9th Cir. BAP 1992).

Finally, most courts have held that postpetition rentals are relevant to the damage claim alone. Once the damage claim is determinable applying state law, the statutory cap of § 502(b)(6) is applied. Postpetition rentals are not to be deducted from the statutory cap, but from the damage claim.

*Id.; In re Financial News Network, Inc.,* 149 B.R. 348, 350–53 (Bankr.S.D.N.Y.1993); *In re Bob's Sea Ray Boats, Inc.,* 143 B.R. 229, 231 (Bankr.D.N.D.1992); *In re Atlantic Container Corp.,* 133 B.R. 980, 989–90 (Bankr.N.D.Ill.1991); *In re Conston Corp.,* 130 B.R. 449, 451–54 (Bankr.E.D.Pa.1991); *In re McLean Enterprises, Inc.,* 105 B.R. 928, 937 (Bankr.W.D.Mo.1989); *In re Gold-blatt Bros., Inc.,* 66 B.R. at 346–48. *Contra, In re Stewart's Properties, Inc.,* 41 B.R. 353, 355 (Bankr.D.Haw.1984).[3]

## III. *CONCLUSION*

Deduction of postpetition rentals from the statutory cap imposed by § 502(b)(6), rather than from the damage claim as determined under state law, is justified neither by the *Oldden* case, the history of Section 63(a)(9) of the Bankruptcy Act, the legislative history of § 502(b)(6) of the Bankruptcy Code nor the overwhelming majority of courts that have visited the issue. Inasmuch as the amounts due under the Lease are undisputed, the claim of Yale should be allowed in the sum of $53,049.00 as a general unsecured claim. A separate order will issue in conformity herewith.

---

**3.** The holding in the *Stewart's* case relative to postpetition rentals has been widely criticized and was reached by that court without a great deal of analysis.