**In re HANDY ANDY HOME IMPROVE-MENT CENTERS, INC., Debtor.**

**Re:  Claims of Henry Colder Company, Inc.**

**Bankruptcy No. 95 B 21655.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 22, 1998.

Catherine Steege, Chicago, IL, for Plaintiff.

Russell C. Brannen, Jr., Milwaukee, WI, for Defendant.

Lawrence K. Snider, Chicago, IL, for Official Unsecured Bank Creditors' Committee.

## MEMORANDUM OPINION AND ORDER UNDER RULE 7056(d)

ERWIN I. KATZ, Bankruptcy Judge.

Handy Andy Home Improvement Centers, Inc.'s ("Handy Andy") Unsecured Creditors' Committee (the "Committee") moves this Court for Summary Judgment on its Objection to the Claims of Henry Colder Company, Inc. ("Colder").

### JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 by reference from the United States District Court for the Northern District of Illinois under General Rule 2.33(A). This matter constitutes a core proceeding under 28 U.S.C. 157(b)(2)(B). Venue is appropriate in accordance with 28 U.S.C. § 1409(a).

### BACKGROUND

On or about August 9, 1985, Handy Andy sublet a West Allis, Wisconsin store from Colder with a term expiring on July 31, 1998 (the "Sublease"). On October 12, 1995, certain creditors filed an involuntary petition under chapter eleven of the Bankruptcy Code, see 11 U.S.C. § 1101 et seq., against Handy Andy. On November 1, 1995, Handy Andy consented to the entry of an order for relief. Thereafter, the Committee was appointed.

After the Court entered an Order authorizing the rejection of the Sublease, Colder filed three proofs of claim.[1] On April 3, 1996, Colder filed Claim No. 966 alleging that it held an unsecured claim in the amount of $116,500.31 for unpaid prepetition rent. On August 1, 1996, Colder filed Claim No. 2495 in the amount of $464,500.31 for lease rejection damages capped under 11 U.S.C. § 502(b)(6) at a year's rent ($348,000.00) plus unpaid rent due under the lease as of the date of the filing of the petition ($116,-500.31).[2] Finally, on July 31, 1996, Colder

---

1. Under Section 365(a) of the Bankruptcy Code, a trustee or debtor-in-possession may, subject to court approval, assume or reject any unexpired lease of the debtor. Rejection of a lease constitutes breach. See 11 U.S.C. § 265(g). The lessor of a rejected lease may assert a claim against the bankruptcy estate for any damages suffered as a result of the termination. See In re Emple Knitting Mills, Inc., 123 B.R. 688, 691 (Bankr.D.Me.

1991). This claim is treated as if it arose before the filing of the bankruptcy petition under Code Section 502(g).

2. In its January 23, 1998 Memorandum Opinion, this Court found that, but for the statutory cap, the total amount of the lease rejection damages claim would be $920,373.25.

filed Claim No. 2477 asserting an administrative claim of $17,333.37 for certain repairs and legal fees.

The Committee objected to the Claims, and has moved for summary judgment. In its Motion for Summary Judgment on its Objections to Colder's claims, the Committee asserts that Claim No. 966 should be disallowed as it duplicates a portion of Claim No. 2495. The Committee contends that Claim No. 2495 should be reduced because Colder partially mitigated its damages when it received $165,000 in exchange for an Early Termination Agreement with its landlord. The Committee argues that Claim No. 2495 should be further reduced to reflect a $25,000 security deposit which Colder had received from Handy Andy. Finally, the Committee alleges that Claim No. 2477 should be disallowed on the grounds that (1) the repairs and fees requested duplicate those asserted in Claim No. 2495; (2) Colder has been relieved from any obligation to make these repairs under the Early Termination Agreement; and (3) Colder cannot prove that these administrative expenses arose subsequent to the filing of bankruptcy.

## DISCUSSION

*Standard of Review*

A motion for summary judgment in a bankruptcy contested matter is governed by the same standard applicable to civil proceedings. *See Fed. R. Bankr.P.* 7056 (incorporating *Fed.R.Civ.P.* 56). Accordingly, summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law." *Fed R. Civ. P.* 56(c). Initially, the burden rests with the moving party. Once the burden has been met, the burden shifts to the non-moving party "to set

forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–35, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As such, the non-movant must establish that sufficient evidence exists to allow a reasonable fact-finder to return a verdict in that party's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202. The Court must evaluate the admissible evidence and inferences therefrom in the light most favorable to the nonmoving party. *See id.* at 255, 106 S.Ct. 2505; *Liberles v. County of Cook,* 709 F.2d 1122, 1129 (7th Cir.1983).

Under Rule 56(d), as adopted by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Court may make findings and rulings of issues and facts which are eliminated as issues for trial.

I. *Claim No. 2495*

A. *Security Deposit*

1. *Timeliness*

■ The Committee contends that the lease rejection damages should be reduced to reflect Colder's receipt of a $25,000 security deposit from Handy Andy. Colder argues that since that credit has been asserted for the first time in the Committee's Motion for Summary Judgment, it is untimely.[3] In response, the Committee argues that the reduction of damages was included in its original Objection, wherein the Committee asserted that Claim No. 2495 was "overstated." (*See* Objection ¶ 4.)[4]

■ Bankruptcy Rule 3007 specifies that a claim objection need only be in writing and filed with the court. However, just as "proofs of claim have been held analogous to complaints initiating civil actions[,] an objection to a claim should meet the standards of an answer." *Collier on Bankruptcy,* § 3007.01[3] (15th ed.1998), *citing Nortex*

---

3. Colder argues that the Committee is attempting to amend its prior Objection to this Claim. Ironically, Colder's argument resembles the Committee's contention in its earlier Objection to Colder's Claims. However, in its January 23, 1998 Memorandum Opinion, this Court declined to hold that Colder's Motion was "a belated motion

to amend its claim." (Committee's Objection to Colder's Mot. ¶ 2)

4. The Committee filed its Objection to Colder's Claims on September 20, 1996, the deadline this Court set for filing Objections to Proofs of Claim.

*Trading Corp. v. Newfield,* 311 F.2d 163 (2d Cir.1962). According to Federal Rule of Civil Procedure 8(b), an answering party must "state in short and plain terms the party's defenses to each claim and shall admit or deny the averments upon which the adverse party relies." Under liberal federal requirements, this pleading will be here deemed sufficient so long as an actionable claim may be gleamed from it and fair notice has been given to the opposing party. *See Great Southern Co. v. Allard,* 198 B.R. 715, 718 (Bankr.N.D.Ill.1996); *see also American Nurses' Ass'n v. Illinois,* 783 F.2d 716, 723 (7th Cir.1986); *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 653 (7th Cir.1984).

When the Committee objected to Colder's claim on the theory that it was "overstated," Colder was put on notice that the Committee intended to assert defenses to the amount claimed. Colder was therefore notified in a timely fashion of the Committee's Objection and could have inquired further into the Committee's use of the term "overstated." As a result, the Court does not find this defense untimely.[5]

### 2. Statutory Cap

■ Under Section 502(b)(6) of the Bankruptcy Code, a lessor's claim for damages for termination of an unexpired lease is subject to a statutory cap. That cap is "designed to compensate the landlord for his loss while not permitting a claim so large as to prevent other general unsecured creditors from recovering a dividend from the estate." *Collier on Bankruptcy* § 502.03 at 7a (15th ed.1998), *citing* H.R.Rep. No. 595 (1977) and S.Rep. No. 989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5787. In relevant part, Section 502(b)(6) provides that:

the claim of a lessor for damages resulting from the termination of a lease of real property is limited to: A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent ... (ii) ... plus B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

It is undisputed that Handy Andy provided Colder with a $25,000 security deposit. (*See* Colder's Amended Answer to Requests for Admissions Nos. 6 and 7 of the Trade Committee at ¶ 6.) Although the Committee contends that Colder has not applied the security deposit to any of the amounts asserted in its proof of claim, Colder disagrees, claiming that the deposit was, in fact, applied towards amounts in excess of the statutory cap.

The Court disagrees with Colder. Section 502(b)(6) is ambiguous, as it contains no reference to the treatment of security deposits. Where, as here, the statute does not address the set-off issue, so that the statutory language contains an ambiguity on its face, legislative history may be considered. *See generally United States v. Kinsley,* 518 F.2d 665, 669 (8th Cir.1975). The House and Senate Reports state that the landlord "will not be permitted to offset his actual damages against his security deposit and then claim for the balance under [Section 502(6)(b) ]. Rather, his security deposit will be applied in satisfaction of the claim that is allowed under this paragraph." H.R.Rep. No. 595 (1977) and S.Rep. No. 989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5787.[6] It is "well-settled that a security deposit held by a lessor on a rejected lease must be applied against the maximum claim for lease termination damages allowed to the lessor under § 502(b)(6)." *In re Atlantic Container Corp.,* 133 B.R. 980, 988 (Bankr.N.D.Ill.1991).

---

**5.** The Court declines to consider the applicability of *In re Lee Way Holding Company,* 178 B.R. 976 (Bankr.S.D.Ohio 1995), as the Committee never filed a motion to amend its objection to a claim, and *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), as the Committee never raised the defense of "excusable neglect."

**6.** The legislative history of Section 502(b)(6) preserves the holding of *Oldden v. Tonto Realty*

*Corp.,* 143 F.2d 916 (2nd Cir.1944), which was decided under Section 62a(9) of the Bankruptcy Act of 1898. In *Oldden,* the court concluded that a security deposit should be deducted from the landlord's claim for damages capped under the Bankruptcy Act. *See In re All for A Dollar, Inc.,* 191 B.R. 262, 263–5 (Bankr.D.Mass.1996). Courts addressing this issue have invariably reached this result. *See, e.g., In re Atlantic Container Corp.,* 133 B.R. 980, 988 (Bankr.N.D.Ill. 1991).

As such, the $25,000 security deposit should be deducted after the statutory cap is applied.[7]

### B. *Mitigation*

A lessor with a claim for damages resulting from a debtor's breach of a lease has an obligation to attempt to mitigate its damages, and any resulting proceeds from that mitigation are properly deducted from the claim before Section 502(b)(6)(A)'s damage cap is applied. *See In re Bob's Sea Ray Boats, Inc.,* 143 B.R. 229, 231 (Bankr.D.N.D. 1992). As support for its contention that Colder successfully mitigated its lease rejection damages, the Committee offers a copy of an Early Termination Agreement between Colder, Warehouse Investment Co., LLP (Colder's landlord), and Parking Lot Investments, LLC (the third party). Colder argues that under this Agreement it received payment for the release of its interest in a totally unrelated property.

Summary judgment is appropriate upon a matter of contract interpretation only where no issues of fact exist because the language of the contract is unambiguous. *See Grundstad v. Ritt,* 106 F.3d 201, 205 (7th Cir.1997) (citation omitted). However, if a contract is ambiguous and "its meaning must be derived from conflicting extrinsic evidence, the question is a factual one best left to the trier of fact." *Aetna Life Ins. Co. v. American Nat'l Bank & Trust,* 956 F.Supp. 814, 816 (N.D.Ill. 1997). A contract is ambiguous if it is subject to more than one reasonable interpretation. *See ICEBU v. Hyster–Yale Materials Handling, Inc.,* 83 F.3d 930, 933 (7th Cir. 1996). The determination of whether a contract is ambiguous is a question of law to be decided by the court. *See R.T. Hepworth Co. v. Dependable Ins.Co.,* 997 F.2d 315, 318 (7th Cir.1993).

Because this Court can not discern whether the Early Termination Agreement's subject matter relates to the dispute at hand, a question of fact exists which precludes the grant of summary judgment.[8] (*See* Committee's Statement of Material Uncontested Facts in Supp. of Mot. for Summ. J., ex. E.) In particular, the Agreement contains the following ambiguities: it refers to a guaranty payment of $165,000 delivered from Bruce G. Barter to Colder, but it is not clear whether Barter provided a guaranty for Handy Andy's debt to Colder or for another unrelated debt or transaction; it is unapparent whether Warehouse Investment Co. relieved Colder of its interest in the Main Building Piece, which is the subject of the sublease between Colder and Handy Andy, or the Parking Lot Piece, an unrelated property; and, it does not specify whether Warehouse Investment Co. received a credit for Real Estate Taxes for the Main Building Lease or for something referred to as the "Barter Mortgage."

### II. *Claim No. 966*

In response to the Committee's contention that Claim No. 966 duplicates a portion of Claim No. 2495, Colder argues that its calculation of the underlying lease rejection damages ($920,373.25) does not include $116,500.31 of prepetition rent. Rather, Colder contends that it capped the lease rejection damages, in accordance with Section 502(b)(6), at a year's rent ($348,000.00) and then increased the cap by adding the unpaid rent due under the lease ($348,000.00 + $116,500.31 = $464,500.31) in accordance with Section 502(b)(6)(B).

It is undisputed that Colder is entitled to $116,500.31 for unpaid prepetition rent. Accordingly, whether Colder attempts to recover this amount as part of Claim No. 966 or Claim No. 2495 does not matter, as it is axiomatic that one can not recover for the same debt twice.

### III. *Claim No. 2477*

The Committee asserts that summary judgment should be granted disallowing Claim No. 2477 on the grounds that (1) the repairs and fees requested duplicate those

---

7. Section 502(b)(6) permits the addition of unpaid prepetition rent to the termination damage statutory cap. It may be argued that the security deposit should be used to offset that portion of the claim. The result is the same reduction of the total allowable claim.

8. This disposition is without regard to the issue of whether Marsha or Bruce Barter guaranteed $165,000 of the Debtor's obligation to Colder or whether the existence of a guarantee from a third person effects the responsibility of the underlying, direct obligor.

asserted in Claim No. 2495; (2) Colder has been relieved from any obligation to make these repairs under the Early Termination Agreement; and (3) Colder cannot prove that these administrative expenses arose subsequent to the filing of bankruptcy.

Questions of fact exist which preclude the grant of summary judgment. First, the Committee has offered no evidence that Claim Nos. 2477 and 2495 duplicate each other. Second, a factual question remains regarding the subject of the Early Termination Agreement which must be resolved before this Court can consider any Objection arising under the Agreement. Finally, the Committee's statement that Colder cannot prove that these were postpetition occurrences is wholly unsupported by any factual assertion in Affidavit or Statement of Uncontested Facts.

Pursuant to Federal Rule of Civil Procedure 56(d) (incorporated by *Fed. R. Bankr.P.* 7056), it is hereby ordered that the $25,000 security deposit shall be applied against the maximum allowed by Section 502(b)(6) so that the total allowable portion of the claim for lease termination damages shall be $323,-000.

It is further ordered that the following material facts are not substantially controverted and will be deemed established:

1. Colder received a $25,000 security deposit from Handy Andy; and

2. Colder has an additional claim for unpaid prepetition rent in the amount of $116,-500.31.

Those material facts which are in controversy are:

1. Whether Colder partially mitigated its lease rejection damages, and

2. Whether Colder has a valid claim for administrative expenses.

It is further ordered that Claim Nos. 966, 2495, and 2477 are consolidated for trial. Hearing on the Objection to the Claim of Henry Colder, Inc. is set for trial on November 9, 1998 at 2:00 pm on the issues not yet determined.